NORA M. GREEN *vs.* EDWARD J. HAMMOND & another, trustees.

Norfolk. January 11, 12, 1916. — March 4, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Landlord and Tenant. Negligence,* Of one controlling real estate, *Res ipsa loquitur. Evidence,* Presumptions and burden of proof. *Dumb-waiter.*

The unexplained fall of an ordinary dumb-waiter, which is operated by two ropes, connected with an apartment occupied by a tenant for whose purposes it is used exclusively, is no evidence of a defect in the condition of the dumb-waiter or of negligence in maintaining it.

Where the lessee of an apartment has by the terms of his lease the right to the exclusive enjoyment and control of a dumb-waiter, the lessor is not required to inspect the dumb-waiter or to keep it in repair.

The owner of a building containing apartments, who has leased the entire building to another and has retained no control over any part of it, cannot be held liable to a sublessee of an apartment for a want of repair in a dumb-waiter used in connection with that apartment.

TORT against Edward J. Hammond and Arno J. Pendleton, trustees of the Beacon Street Corner Trust, for personal injuries sustained by the plaintiff on May 31, 1913, at about five o'clock

in the afternoon, from the falling of a dumb-waiter upon her wrists when the plaintiff was using it in connection with the apartment occupied by her in a house belonging to the defendants. The first count of the declaration alleged a failure to maintain the dumb-waiter in a safe and proper condition for the plaintiff's use and the third count alleged that the dumb-waiter was constructed in an unsafe and dangerous manner. The other counts were waived. Writ dated August 15, 1913.

In the Superior Court the case was tried before *Irwin*, J. The evidence is described in the opinion. It was stated in the bill of exceptions that, after about a week of the existence of the first lease to the plaintiff, the dumb-waiter "was used exclusively by the plaintiff and those occupying under her and those having occasion to send up and take down material on the dumb-waiter to and from the apartment of the plaintiff." There was evidence that one McSweeney was the janitor of this building, as well as of other buildings, that he "tended the heating apparatus which furnished heat to the various apartments, took off ashes and garbage placed on the waiter by the plaintiff and lowered sometimes by the plaintiff, sometimes by himself, and sent up ice, milk and groceries left in the basement for the plaintiff. He testified that the milk and groceries usually were left in boxes or compartments allotted to the different tenants in the entrance to the basement and that when he came round, usually about five o'clock in the afternoon, he sent the plaintiff's up on the waiter." There also was evidence that "Grocery men, provision men and others were accustomed also to use the dumb-waiter, but solely in connection with the plaintiff's apartment."

At the close of the evidence the defendants asked the judge to make various rulings, among which were the following:

"1. On all the evidence the plaintiff cannot recover.

"2. The plaintiff is not entitled to recover under the first count."

"4. The plaintiff is not entitled to recover under the third count."

The judge refused to make these rulings and submitted the case to the jury on the first and third counts. The jury returned a verdict for the plaintiff against both defendants personally in the sum of $500; and the defendants alleged exceptions.

*C. S. Knowles*, for the defendants.

*J. E. Macy*, for the plaintiff.

PIERCE, J.   Under an indenture bearing date September 19, 1912, the plaintiff as lessee took possession of the premises described, and covenanted to pay the rent reserved and to keep and perform all agreements therein contained.   The lease was executed by A. J. Pendleton as lessor, and by the plaintiff, Nora M. Green, as lessee.   It ran for a term of one year from its date.

The premises described in the lease consisted of "Four Rooms and Bath on Second floor in the Private House numbered 1880 Beacon Street, furnished."   The lease contained no covenant in reference to the making of repairs.   A dumb-waiter ran from the basement to the second floor, with an opening into the apartments on the first and second floors.   There were no stairs leading from the apartment on the second floor to the basement or to the back part of the building in question, although there was communication by speaking tubes and electric appliances.   The dumb-waiter was used to take up ice, milk, groceries and other articles left in the basement for the use of the tenants, and was also used by the occupants of the apartment to send down to the basement ashes, garbage and such other things as could be removed in that manner.

The opening to the dumb-waiter from the apartment on the first floor was closed soon after the plaintiff took possession of her apartment under the lease, and thereafter, during the entire. period of her occupancy, the dumb-waiter was used exclusively by the plaintiff or persons acting with her permission or by her direction.   In form and construction the dumb-waiter presented no unusual feature; it was simple in its construction and no skill was required in its operation.   It ran in a sheathed shaft, the dimensions of which are not given, but sufficiently greater than those of the waiter to permit of "considerable play both sidewise and back and forth" between the sides of the waiter and the sides of the shaft.   A rope attached to crossbars at the top of the dumb-waiter, ran from the crossbars over a large pulley at the top of the shaft, thence through a hole in the boarding to a counter weight which moved up or down, as the waiter was raised or lowered, between the permanent structure of the building and the sheathing forming the side of the shaft.   The whole function of

the counter weight was to balance the weight of the dumb-waiter. The dumb-waiter was raised by pulling down upon a rope which ran from the basement over two pulleys at the head of the shaft at the opening into the plaintiff's apartment. A rope attached to the bottom of the dumb-waiter extended to the basement, and a person in the basement could operate the elevator up or down at will by pulling one or the other of these two ropes.

On January 11, 1913, Pendleton and the plaintiff cancelled the lease of September 19, 1912, and executed a second lease for a term of three years beginning September 23, 1912, with covenants in all respects like those contained in the first lease.

On or about May 31, 1913, as the plaintiff was using the dumb-waiter, it dropped and caught her hands and wrists, and fell down the shaft after their release. There was no direct evidence that the fall was due to any specific, defined cause, nor was there any reason to infer a defective condition of the waiter or of its appliances, apart from the fact that it fell in the manner in which it did.

Speculating, it may be said that the rope attached to the counter weight broke, but there was no evidence that such was the fact; or it may be surmised that the rope came off the large pulley and thus permitted the waiter, released of its counter balance, to fall. With equal force it may be argued that its fall was attributable to the method adopted of lowering it by the janitor or some other unknown person.

There is no evidence that at the time of the execution of the new lease there was anything dangerous or defective about the condition or construction of the dumb-waiter or of its appliances that was hidden to the plaintiff or to reasonable observation.

With the execution of the new lease the plaintiff became entitled to the exclusive enjoyment and control of the use of the dumb-waiter, and the lessor no longer was required to inspect it or to keep it in repair. *McLean* v. *Fiske Wharf & Warehouse Co.* 158 Mass. 472.

The plaintiff contended that the evidence warranted the jury in finding that the title of her lessor was a "sham;" that the real title was in the defendants as trustees, and that the accident justified a finding that it was due to the act of a servant of the trustees in pulling down the waiter without warning.

If it were true that the defendants, as trustees, were the real landlords of the plaintiff, notwithstanding the form of the indenture, it nevertheless remains, that there was no evidence sufficient to warrant the jury in finding that the cause of the accident was the negligent act of a servant of the trustees in pulling down the waiter without warning.

If by reason of estoppel the plaintiff cannot deny the title of her lessor or of those under whom she claims, then the defendant Hammond cannot be held liable upon either count of the declaration for defects in the condition of the waiter or for failure to keep it in repair, because, having leased the entire premises to the defendant Pendleton, he ceased with the execution of the lease to have control over any part thereof. *Lindsey* v. *Leighton,* 150 Mass. 285. *Marley* v. *Wheelwright,* 172 Mass. 530.

There was evidence to warrant a finding of the plaintiff's due care.

The defendants' requests for a ruling that "the plaintiff is not entitled to recover under the first count" and for a ruling that "the plaintiff is not entitled to recover under the third count" should have been given.

The exceptions are sustained and judgment is to be entered for the defendants under St. 1909, c. 236.

*So ordered.*