ROBERT F. MANN & another *vs.* HOBART H. COOK, JR. & another.

Norfolk. April 3, 1963. — June 3, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Negligence*, Dangerous article, Whip, Minor. *Evidence*, Relevancy and materiality.

A finding in an action that the defendant, a student fourteen years old living in a dormitory at a boarding school, failed to exercise the prudence required of a boy of his years and was liable to another student, the plaintiff, for injury to his eye as a result of its being struck by a "knot of wire" which had become dislodged from the tip of a whip owned and controlled by the defendant but snapped in a narrow corridor of the dormitory by a third student, also fourteen years old, as the plaintiff entered the corridor from a doorway, was warranted by evidence that the defendant had constructed the whip, a rolled, looped bed sheet secured by stranded wire "bent . . . in small angles," and had tested the whip by snapping it three or four times, that he knew snapping it in the corridor with students passing and repassing could be dangerous, and that shortly before the accident he had entrusted the whip to the third student and had observed him snapping it in the corridor. [176–179]

At the trial of an action against a student at a school for negligence in allowing a fellow student to snap a whip of the defendant and cause

injury to the plaintiff, there was no error in excluding evidence that a master of the school to whom the whip had been shown by the defendant had not given him "any order as to what to do or not to do with it." [179]

TORT. Writ in the Superior Court dated May 7, 1959.

The action was tried before *Taveira, J.*

*Robert W. Cornell* for the defendant Cook.

*Edward O. Proctor (Edward O. Proctor, Jr.,* with him) for the plaintiffs.

*Walter F. Henneberry* for the defendant Costin.

SPALDING, J. A summary of the evidence in this very unusual action of tort is as follows: Robert F. Mann, hereinafter called the plaintiff, and the defendants, Hobart H. Cook, Jr., and William G. Costin, III, all aged fourteen, were students at a private boarding school in this Commonwealth. They lived on the same floor of a dormitory comprising twelve rooms which opened onto a corridor five feet in width and slightly more than sixty feet in length. Prior to the accident there had been "a rumor . . . going around" that one of the "dorm" masters had made improper advances toward some of the students. Cook, believing that he needed to protect himself against these advances, made up a whip by taking half a bed sheet and "forming it into a roll three or four feet long." He then bound it with three pieces of wire. The rolled sheet was looped back upon itself and was secured by two pieces of wire about a foot apart. The whip tapered down from the thick end, which was the handle. Near the thin end of the whip a piece of wire was wound "in a spiral manner down towards the tip and then the wire was wound around the tip two or three times." The wire "continued out" from the end of the sheet for about two inches, and at the end of the wire and beyond the cloth the wire was knotted into a pear-shaped wad about $5/8$ of an inch long, $3/8$ of an inch wide, and $1/4$ of an inch thick. The wire was a stranded one made up of a number of thin wires and had been used by Cook to connect radio equipment and to make an aerial. Prior to making the whip, Cook had "bent the wire in

small angles." Upon completion of the whip, Cook tested
it by snapping it three or four times.

About fifteen minutes before the accident Cook took the
whip from his closet and gave it to one of the other boys to
use. This boy snapped it in the corridor and then gave it
to the defendant Costin who had Cook's permission to use
it. Cook, while standing in the doorway of another boy's
room, saw Costin snap the whip against the wall of the
corridor. Then "something caught . . . [Cook's] atten-
tion"; he turned and saw that the plaintiff, who had just
come out of the bathroom doorway, had "dropped a glass
and . . . fell to the floor with his hand over his eye."
Cook noticed that the piece of knotted wire, which formed
the tip of the whip, was missing.

"There was evidence from which the jury could find that
the plaintiff had been struck in the eye by the knot of wire
which had been at the tip of the whip and that as a result
. . . the eye had to be removed."

This action of tort was commenced by the plaintiff and
his father (the latter for consequential damages) against
Cook and Costin. On the counts against Costin verdicts
were returned for the defendant. On the counts against
Cook there were verdicts for the plaintiff and his father.
The case comes here on a consolidated bill of exceptions of
the defendant Cook and the plaintiffs. Cook's exceptions
arise out of the denial of his motion for directed verdicts, a
ruling on evidence, and the refusal to grant certain requests
for instructions. The plaintiffs' exceptions in the case
against Cook involve a ruling on evidence; their exceptions
in the case against Costin arise out of the denial of certain
requests for instructions. If Cook's exceptions are over-
ruled the plaintiffs do not press any of their exceptions.

1. We are of opinion that Cook's exception to the denial
of his motion for directed verdicts must be overruled. In
*Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, we held that a
person who owns or controls an instrumentality which he
knows, or with reasonable care should know, is dangerous
in its nature or is in a dangerous condition and who dis-

Mann v. Cook.

poses of it in a manner that he foresees, or in the exercise of reasonable care ought to foresee, will probably carry that thing into contact with some person, known or unknown, who will be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him. See Restatement, Torts, § 388.

Cook, who owned and controlled the whip, entrusted it to Costin and observed him snapping it in the corridor. Furthermore, he admitted that he knew that snapping the whip in a corridor with students passing and repassing could be dangerous. On the basis of this and the other evidence a jury was warranted in finding that Cook, having constructed the whip, knew of its dangerous nature, and ". . . [dealt] with . . . [it] in a way that he . . . [foresaw] or in the exercise of reasonable care ought to . . . [have foreseen would] probably carry . . . [the whip] into contact with . . . [a] person . . . [such as the plaintiff] who . . . [would] probably be ignorant of the danger . . . [and owed] a legal duty to . . . such person to use reasonable care to prevent injury to him."[1]

While conceding, in general, the correctness of the principle set forth above, Cook argues that it has no application here because of his youth. He argues that this doctrine has been applied only where the immediate actor because of his youth was less likely to appreciate the danger in the use of the article than the person (usually an adult) who has supplied him with it. In other words, he urges, this rule has no application where, as here, the supplier and the user were both fourteen year old boys. In support of this argument he cites *Sousa* v. *Irome,* 219 Mass. 273 (liability imposed on parent who had entrusted gun to child who was not a fit person to be entrusted with a gun), *Gudziewski* v. *Stemplesky,* 263 Mass. 103 (same), and *Smith* v. *Eagle Cornice & Skylight Works,* 341 Mass. 139 (contractor held liable to child injured by axe where employee left it in a place where children were known to play).

---

[1] *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96.

We know of no case, and our attention has been directed to none, which holds that the principle set forth above does not apply to a case where the supplier, as distinct from the user, of the instrumentality causing the harm is a youth. Of course, the youth of the supplier defendant in such a situation is a factor to be considered by the triers of fact in determining negligence.

Infants are liable for their torts. *Sikes* v. *Johnson,* 16 Mass. 389. *Homer* v. *Thwing,* 3 Pick. 492. *Dow* v. *Lipsitz,* 283 Mass. 132. They are not, however, held to the same standard of care as adults. Their conduct, as the judge charged repeatedly, is to be judged by the standard of behavior expected from a child of like age, intelligence, and experience. Restatement, Torts, § 283, comment (e). Prosser, Torts (2d ed.), § 31. Annotation in 67 A. L. R. 2d 576. See *Lynch* v. *Smith,* 104 Mass. 52, 57. Cook admitted his awareness of the danger, and the jury was warranted in finding that he, appreciating the danger, failed to exercise the required prudence of a boy of his years when he allowed Costin to use the whip in a dormitory corridor where other students could be expected to pass. The whip was a crudely made device capable of inflicting serious injury. Cook knew the wire used in constructing the whip had been bent at small angles and the jury could have believed that a boy of that age and experience could foresee the possibility that the wire tip would become dislodged when snapped repeatedly.

Our attention has been directed to cases in other jurisdictions holding that children are not liable for injuries arising from their conduct while participating in children's games if the games are customarily played by children and are usually harmless and free from danger to participants and bystanders. See, for example, *Briese* v. *Maechtle,* 146 Wis. 89 (ten year old boy held not liable for injuries inflicted on another boy with whom he collided while playing tag); *Hoyt* v. *Rosenberg,* 80 Cal. App. 2d 500 (twelve year old boy held not liable to a companion injured by him during game of "kick the can"). These cases do not aid Cook.

If it be assumed that children customarily make devices of the sort here involved, it cannot be said that this was the sort of activity which in the words of the Supreme Court of Wisconsin are "[u]sually harmless and free from danger to participants and bystanders." *Briese* v. *Maechtle, supra,* 91. See, for example, *Markley* v. *Whitman,* 95 Mich. 236, where the plaintiff, a nonparticipant in a game of "rush," was permitted to recover against a fellow student who "rushed" him.

2. Cook, when examined by his counsel, testified that he showed the whip to one of the masters. He was then asked, "Did he give you any order as to what to do or not to do with it?" This question was excluded, subject to Cook's exception. Cook's offer of proof was that the answer would be "no." There was no error. This evidence had little, if any, bearing on whether Cook was negligent in allowing a fellow student to use the whip in the circumstances here disclosed.

3. At the conclusion of the charge the defendant Cook excepted to the failure of the judge to give certain requests for instructions. The first three requests, which dealt with Cook's legal right to construct, keep and lend the whip, were properly denied since they were not relevant to the issue of his negligence. Such portions of the remaining requests as he was entitled to were given in substance.

4. Since Cook's exceptions are overruled, we need not consider the plaintiffs' exceptions.

> *Plaintiffs' exceptions dismissed.*
> *Exceptions of the defendant Cook overruled.*