MARTIN J. CARNEY *vs.* HENRY BEREAULT & others.

Suffolk.    November 4, 1964. — February 11, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Negligence,* Motor vehicle, Duty to warn, Manufacturer, Hydraulic lift. *Landlord and Tenant,* Control of premises, Repairs, Landlord's liability to tenant or one having his rights, Letting of defective premises. *Evidence,* Of general practice, Judicial discretion.

Evidence in an action that an automobile known by its owner, the defendant, to need an adjustment of its brakes was taken by the defendant's husband to a garage for greasing, where an employee of the garage

proprietor raised it on a hydraulic lift without having been warned of the need for adjustment of its brakes and it subsequently rolled off the lift and struck the plaintiff, did not warrant a finding that the brakes were in dangerous condition, or that the defendant or her husband had any reason to suppose that a warning of the need for adjustment thereof was necessary or had any duty to give such a warning, or that the defendant was liable to the plaintiff.   [505–506]

In an action against the manufacturer of a hydraulic lift for personal injuries sustained by the plaintiff when an automobile rolled off the raised lift in a garage and struck him nine years after the lift was manufactured and sold by defendant and seven years after it was installed in the garage, the evidence, even if it showed that the accident was due to a defect then existing in the lift, did not warrant a finding that the defect was attributable to the manufacture of the lift or was existent when the lift was sold by the defendant, or that the defendant was liable to the plaintiff.   [506–507]

One injured through an alleged defective condition of a hydraulic lift in a garage while he was in the garage as a business invitee of a lessee of the garage premises and the equipment therein could not recover for such injury against the owner of the premises and the equipment where it appeared that the lease by the defendant to the lessee specifically required the lessee to keep them in repair and expressly negatived any right of control of them on the part of the defendant as lessor, and the evidence failed to show that repairs made by the defendant from time to time were other than gratuitously made or that, even if the alleged defect in the lift existed at the time of the lease, it was a hidden defect known to the defendant and the defendant failed to warn the lessee thereof.   [507–509]

No abuse of discretion appeared in exclusion of evidence of commercial "standards" of manufacturers with respect to hydraulic lifts in an action against the manufacturer of a lift for personal injuries alleged to have been caused by a defect therein.   [510]

TORT.   Writ in the Superior Court dated October 27, 1960.

The plaintiff alleged exceptions taken at the trial before *Kalus, J.*

*Morris Michelson* for the plaintiff.

*Charles W. O'Brien* for Gulf Oil Corporation.

*John J. C. Herlihy* (*Neil L. Lynch* with him) for Wayne Pump Company.

*Robert Fulton,* for Marion Griffith, submitted a brief.

SPALDING, J.   The evidence in this action of tort included the following: The defendant Bereault since 1952 was the operator of a garage in Holbrook.   The defendant Sim-

mons was an employee of Bereault.  On November 19, 1959, an automobile owned by the defendant Marion Griffith was brought to the garage by her husband, Raymond Griffith, to be greased.  Simmons placed the Griffith car, which weighed about three tons, on a hydraulic lift and raised the lift to its maximum height, five feet.  Simmons then placed wooden blocks ahead of and behind the right rear wheel, "pulled the emergency brake up to the maximum," and "put the gear in reverse."  After draining the oil, he went around to the front of the car and, while he was wiping the grease fittings, the car rolled "straight back and off the ramp" and struck the plaintiff, who was a business invitee of Bereault.  The car "went off the ramp at the rear of the rails where the flaps were"; it went right over the flaps.

Bereault testified that there are four possible means of keeping a car on the lift, namely "putting it in gear, using the handbrake, using the blocks and having the flaps." The safest course was to use all four of these devices.

The lift on which the car was placed was a "single post hydraulic hoist with two rails."  When a car is to be hoisted it is driven onto the rails and a hydraulic hoist in the center pushes the rails up.  The rails "have flaps in front and back and as the hoist goes up these flaps close for the purpose of keeping the car from rolling off the rails."  There were times before the accident when the flaps "did not raise all the way up" and if that occurred "they wouldn't be so effective to stop a car from rolling." When raised completely, the flaps "went up to about a 45 degree angle."  After the accident the flaps "were sprung down [and] bent"; they would come part way down but would not lock.

The garage was owned by the defendant Gulf Oil Corporation (Gulf) and was leased to Bereault.  The lift on which the Griffith car was placed was manufactured by the Wayne Pump Company (Wayne) and was sold to Gulf in 1950. Bereault testified that the "lift was not level, that it is possible it was slanted down to the rear as the rails extended backward"; that he thought he had noticed this before the

accident; and that it "hasn't been changed since [it] was installed by . . . Gulf."

Evidence in addition to the foregoing will be set forth hereinafter as occasion requires.

As a result of the accident described above the plaintiff brought this action of tort in five counts. Counts 1 and 2 against Bereault and Simmons, respectively, were submitted to the jury and verdicts were returned for the plaintiff. No exceptions are before us touching these counts. With respect to counts 3, 4, and 5 against Gulf, Wayne, and Griffith, respectively, a verdict was directed for each defendant. The case comes here on the plaintiff's exceptions to the direction of these verdicts and to certain rulings on evidence.

1. In the case against Mrs. Griffith, the following additional evidence is relevant. The brakes of the automobile needed adjustment and she knew it. Neither Mrs. Griffith nor her husband, who took the car to the garage, told Simmons or Bereault that an adjustment of the brakes was necessary. An adjustment of the brakes not only would affect the operation of the foot brake, but also the hand brake.

It is the plaintiff's contention that Mrs. Griffith is liable because of the defective condition of the automobile and because of the failure to warn Simmons and Bereault that the brakes needed adjustment. Under our decisions "a person who owns or controls an instrumentality which he knows, or with reasonable care should know, is dangerous in its nature or is in a dangerous condition and who disposes of it in a manner that he foresees, or in the exercise of reasonable care ought to foresee, will probably carry that thing into contact with some person, known or unknown, who will be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him." *Mann* v. *Cook,* 346 Mass. 174, 176–177. *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96. The plaintiff's case against the defendant Griffith does not come within this principle. It cannot be inferred from the mere fact that the brakes needed adjustment that their braking

power had been reduced to the point of being dangerous. The only direct evidence concerning the effectiveness of the brakes indicated the contrary. There was testimony to the effect that the brakes "were stopping the car just as well as if they had been tightened up a little."

In the circumstances, Mrs. Griffith was not under a duty to give notice that the brakes needed adjustment. Generally there is no duty to warn of danger, unless the person on whom that duty rests has some reason to suppose a warning is needed. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 513. *Cadogan* v. *Boston Consol. Gas Co.* 290 Mass. 496, 499–500. *DeMartin* v. *New York, N. H. & H. R.R.* 336 Mass. 261, 266. Here, not only was there a failure to establish that a danger existed, but also that Mrs. Griffith or her husband had reason to believe that a warning was necessary.

2. The count against Wayne is based upon the alleged negligent manufacture of the lift. See *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92. Wayne manufactured the lift in 1950. In that same year Wayne sold and delivered it to Gulf. The accident which gave rise to this action occurred over nine years later. The lift was installed in the garage in Holbrook by Gulf in 1952. Since the installation, "there has been no change in the construction of the lift."

Although *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, has relieved the plaintiff of the necessity of establishing privity of contract between the plaintiff and the defendant in cases based upon negligent manufacture, the plaintiff still has the burden of proving that a defect attributable to the manufacturer's negligence caused the injury. *LeBlanc* v. *Ford Motor Co.* 346 Mass. 225, 230. See *Ricciutti* v. *Sylvania Elec. Prod. Inc.* 343 Mass. 347, 352. Even if we assume that a defect in the lift caused the accident, there was no evidence tending to establish that the lift was defective at the time it was sold by Wayne. An inference that such was the case might be permissible if a defect in the construction of the lift had been discovered immediately or shortly after delivery. *LeBlanc* v. *Ford Motor Co.* 346 Mass. 225.

See *Pelland* v. *D'Allesandro,* 321 Mass. 387, 389; *Brennan* v. *Arlington Gas Light Co.* 341 Mass. 679, 683. But, as we cautioned in the *Yardley* case ". . . [W]here the thing in question is subject to change by wear or crystallization or deterioration or neglect or unskilful repair or improper handling, perhaps in a course of years, there is danger that juries may overlook the nearer causes and wrongly attribute the injury to some antecedent neglect of the manufacturer or supplier, and do so at a time when he cannot recall forgotten events." 319 Mass. 92, at pages 99–100. When, as here, the accident occurred after the defendant has surrendered control of the instrumentality involved, it is incumbent upon the plaintiff to show that it had not been improperly handled by intermediate handlers. *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 183. See *LeBlanc* v. *Ford Motor Co.* 346 Mass. 225, 229. The evidence shows no more than that the construction of the lift had not been changed since 1952, two years after Wayne had delivered it to Gulf. There is no evidence negativing the possibility that the condition of the lift had changed due to deterioration or mishandling. Because of this failure in proof, the plaintiff did not make out a case for the jury against Wayne.

3. In the case against the defendant Gulf, there was this further evidence. Gulf has servicemen who visit stations to repair equipment when complaints have been made. On December 1, 1959, approximately two weeks after the accident one of the employees did some work on the lift. Gulf also has salesmen who "make reports of conditions they see . . . if anything is wrong at a location." At the time of the accident, Gulf owned the premises and the equipment within the garage, including the lift. By a lease executed prior to the accident Bereault had become the lessee of the premises and equipment. The lease provided that Bereault "shall keep said premises, buildings, equipment, fixtures . . . in good condition and repair." Control by Gulf was expressly disclaimed by a clause which read, "None of the provisions of this lease shall be construed as reserving to

the Lessor any right to exercise control over the service station business and operations of the Lessee conducted upon the leased premises, or to direct in any manner how the Lessee shall conduct his business.''

The plaintiff's rights against Gulf are limited by the extent of the duty which Gulf owed Bereault. A landlord owes the same duty to the business invitee of a tenant which he owes to the tenant himself, but no greater duty. *Telless v. Gardiner,* 266 Mass. 90, 92. *Lischner v. Hahn,* 273 Mass. 259, 262. *Carney v. Conveyancers Title Ins. & Mortgage Co.* 309 Mass. 197, 199. Compare *Boronskis v. Texas Co.* 344 Mass. 477, where the injury was to adjacent property. In determining the rights of the plaintiff, we must consider, therefore, what rights Bereault would have had as a tenant against Gulf.

This is not a case where the landlord has retained control of a portion of the premises. In the case at bar, the tenant Bereault was in control of the lift. Thus, in order to recover, the plaintiff must establish that Gulf owed Bereault, and therefore the plaintiff, a duty of some sort to repair.

According to the evidence and an offer of proof, Gulf had from time to time made repairs. But, there was no indication that they had been done other than gratuitously. In such a case, the landlord's duty is very limited. He is liable only for gross negligence, and then ''only to the tenant or person with whom he makes the gratuitous undertaking.'' *Bergeron v. Forest,* 233 Mass. 392, 398. *Thomas v. Lane,* 221 Mass. 447, 452.

By the express terms of the lease, Bereault, and not Gulf, was under a duty to make repairs. To be sure, there was a provision to the effect that ''The Lessee will not paint or repaint the buildings or any of the structures, equipment or fixtures located thereon, make no alterations, additions, or changes thereon or thereto, without first obtaining written consent of the Lessor.'' But this language did not shift the obligation to make repairs from Bereault to Gulf. Gulf, in the absence of a contractual duty to repair, would

not have been liable to the plaintiff for negligence in making repairs. *Feeley* v. *Doyle,* 222 Mass. 155. *Diamond* v. *Simcovitz,* 310 Mass. 150, 153. Likewise, the plaintiff has failed to establish that Gulf had contracted to maintain the premises in a safe condition on its own responsibility and without notice, which is the situation described in the third category in *Fiorntino* v. *Mason,* 233 Mass. 451, 453–454. See *Miles* v. *Janvrin,* 196 Mass. 431, 433. Consequently, Gulf would not be liable for a failure to discover and remedy any defect in the lift.

The only other theory upon which the plaintiff might recover involves proving that the lift was in a dangerous condition at the time of the demise of the premises. As a general rule, there is no implied covenant of fitness. *Bolieau* v. *Traiser,* 253 Mass. 346, 348. One qualification is that if the landlord knows of some hidden defect of which the tenant is ignorant, then he has an obligation to give the tenant notice and is liable for injuries arising from a failure to do so. *Green* v. *Hammond,* 223 Mass. 318, 321. *Stumpf* v. *Leland,* 242 Mass. 168, 171. Even if the plaintiff had been able to establish that defects in the lift preëxisted the letting, he would still have the burden of proving that the defects were hidden; that Gulf knew they existed; and that Gulf failed to warn Bereault. But neither the evidence nor the offer of proof was sufficient to make out a case under this theory.

4. An exception was taken to the exclusion of a question asked Bereault as to what he saw the employees of Gulf do in connection with the hydraulic lift before the accident. An offer of proof indicated that Bereault would testify that he saw them service, maintain and repair it. But this offer of proof, together with the evidence introduced, still would not have established that Gulf controlled a portion of the premises, namely, the lift. The offer did not indicate that Gulf covenanted to make repairs or that Gulf failed to warn of a hidden defect at the time of the letting. There was, therefore, no basis for recovery and the exclusion of the question was not prejudicial.

Carney *v.* Bereault.

5. On direct examination the plaintiff's counsel asked the husband of the defendant Griffith the following question, "And they [the brakes] needed adjustment, as you knew, to hold the car in place?" There was an objection and it was sustained. The question was palpably leading and was properly excluded.

6. In the cross-examination of the district manager of Wayne he had testified that he was familiar with the commercial standards developed by manufacturers. He was then asked whether "one of those standards was that automatic chocks shall be provided for roll-on runways at the ends of the rails of the lift and shall operate to lock in the first twelve inches of ascent and not unlock automatically before the last twelve inches of descent." The question was excluded subject to the plaintiff's exception. There was no error. "Our cases have long held that evidence of a general practice or of what is customarily done by others may, in the judge's discretion, be received on the issue of negligence." *Kushner* v. *Dravo Corp.* 339 Mass. 273, 277. *Myers* v. *Hudson Iron Co.* 150 Mass. 125, 138. *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576, 579. See *Robitaille* v. *Netoco Community Theatre of No. Attleboro, Inc.* 305 Mass. 265, 268. Even where the discretion of the trial judge would have been better exercised by admitting the testimony, this court has refused to say as a matter of law that the court was bound to receive it. *Moynihan* v. *Holyoke,* 193 Mass. 26, 30.

This opinion as to points 3 and 4 is that of a majority of the court.

*Exceptions overruled.*