*Southern District*

**JANIS MERRITT, P.P.A., ET AL**

**v.**

**UTILITY METAL PRODUCTS, INC.**

Argued: ——— 1966.   Decided: ——— 1966.
*Present*: Nash, C.J., *Cox & Lee, JJ.

Case tried to *Tamkin, J.* in the District Court of East Norfolk, No. 34905.

*Cox, J.*  In this action of tort for negligence, there was a finding for the minor plaintiff in the sum of $4450.00 and for her father in the sum of $117.25 for consequential damages.

The case was reported because the defendant claims to be aggrieved by the denial of its request for rulings which are as follows:

"1.      The plaintiffs are not entitled to recover on their declaration.

"2. a.   The evidence is insufficient to sustain a finding of negligence against the defendant.

c.       The plaintiffs have not shown that the locker was not improperly handled by Janis Merritt or intermediate users or handlers after the de-

fendant surrendered control of said locker.

    d. The plaintiffs have failed to prove by a fair preponderance of the evidence that the defendant was negligent in the installation of the locker described in the declaration."

The defendant also claims to be aggrieved because the justice, while ruling that the doctrine of *res ipsa loquitur* does not apply, nevertheless, found that the defendant was negligent because its representative improperly installed a rivet which came loose causing the locker to fall upon the minor plaintiff.

The evidence does not seem to be disputed.

On *January* 28, 1963 the defendant's president installed seventy-eight metal lockers at Temple Shalom in Milton for the use of pupils attending its religious school. Each locker weighed fifty pounds. The lockers which fell upon the child were three in number and were bolted together. Each locker was six feet high, one foot wide and one foot deep. Each rested upon four six inch legs. There was a shelf nine inches below the top of each locker. Each locker contained six coat hangers below the shelf in sets of three, the lower being thirty-six inches above the bottom of the locker. The lockers were intentionally bought without locks. After installation and on the same day, the lockers were all inspected by the school's principal.

The foregoing evidence was given by the defendant's president.

The defendant's president also testified that he had been installing lockers for about thirty years and was an expert. He fastened "the battery of three lockers" to the wall with a single metal clip for the purpose of keeping the lockers from shifting and for security. The clip was one twentieth of an inch thick. It had a hole at each end through which one end was attached to the wall by a one-quarter inch screw and the other end was attached to the middle locker by a rivet, one-eighth of an inch in diameter, with a head on each end of the rivet. He riveted the clip to the locker by hand, using a special tool for the purpose. Another method of attaching the rivet to the locker is by welding. Which was the better method does not appear. There was no fastening of the locker to the floor, or to the wall, other than by the single clip. The witness said he did the work in a proper manner. Some sets of lockers were "free standing" and not attached to anything. The price of $1068.60 was paid in full by the school. The defendant's president knew that the lockers were to be used by the school children to hang up their clothes.

The defendant had nothing whatever to do with the lockers after their installation on January 28, 1963 and up to the time they fell upon the minor plaintiff on November 3, 1963. During that intervening period of over nine months, the defendant had received no complaints about the lockers.

A teacher of the minor plaintiff testified

that there were about three hundred pupils in the school. Two pupils from each class were assigned to each locker. She taught two classes every Sunday morning. From time to time the children would step on the lockers to use them reaching up to hang their clothes. On November 3, 1963, while on a stairway about fifteen feet away from the locker in question, she heard a crash and saw Janis on the floor. The three lockers had fallen over on top of her. The lockers were intended to be used by the pupils only and the janitor was supposed to prevent their use by others.

The president of Temple Shalom testified that there were three hundred pupils in the school. There were about four hundred members of the Temple. In addition to the school and religious services, there were many affairs held at the Temple at various times during the day which are attended by members and their guests. The doors to the Temple are open to all and the lockers could be used by them although they were principally intended for the use of the school children. The affairs of the Temple are not held in that part of the structure where the lockers are located. The facilities in that area were not supposed to be available for the people in the social hall. The witness had never seen the lockers used by others than the pupils of the school. The Temple employed a janitor to maintain the building and keep it clean. Prior to the accident on November 3, 1963 the president of the Temple

had never notified the defendant that anything was wrong with the lockers, however, after the accident, he did call the defendant to come and tighten up all the lockers.

The plaintiff, Janis Merritt, eight years old in June 1963, was about four feet seven inches tall at the time of the accident. She commenced using the locker about September 12, 1963, and used it about eighteen or twenty times before the accident. It vibrated and she thought it was loose but did not report it to anyone. On November 3, 1963 she put her coat in the locker and then jumped up to put her hat on the top shelf. The battery of lockers toppled over and fell on her causing injuries.

Another pupil testified that she had been using the same locker as the plaintiff, that it was loose and shaky but she made no report to anyone. She testified that she never stood or jumped in the locker.

There was testimony by the minor plaintiff's father that on the day of the accident he saw the locker, separated from the wall, and the clip with no screw or rivet in it attaching it to the locker.

The justice made special findings describing the accident. These findings are supported by the evidence. He found "that the inside head of the rivet came loose from the clip and locker causing the locker to fall on the plaintiff Janis Merritt." He further found "that prior to the date of the accident that there was some vibration to the three lockers,

and once in a while the three lockers would shake; that from time to time the children would step on the inside of the lockers in order to reach books and clothing on the top shelf; that many people might have access to the lockers which had no locks and that the building was open many times affording possible access to the locker area.

"The court further finds that at no time did the officials at the Temple or the Religious School complain to the defendant about the lockers from January of 1963 to November 3, 1963, the date of the accident.

"The court finds that the defendant was negligent in that the defendant by its president, William Rubenstein, improperly installed a rivet that came loose causing the lockers to fall upon the plaintiff Janis Merritt; that the defendant was further negligent in using only one clamp to safely secure the three lockers weighing 150 lbs. to the wall, with the knowledge that the lockers were to be used by children in the manner in which they were being used when the injury occurred; the court finds that the defendant is liable for the natural and probable consequences of its negligent act or omission, the result should have been anticipated." Finally, the justice found that the minor plaintiff was not guilty of contributory negligence.

█ The decisive question involves the application of what is now a familiar rule of law. "Where, as here, the accident occurs after the defendant has surrendered control

of the instrumentality involved, it is incumbent upon the plaintiff to show that the instrumentality had not been improperly handled by himself or by intermediate handlers." *Rafferty v. The Hull Brewing Company,* 350 Mass. 329. The foregoing quotation which appears in the Rafferty case is from *Evangelio v. Metropolitan Bottling Co. Inc.,* 339 Mass. 177.

The defendant, in the case under consideration, had surrendered all control of the lockers on January 28, 1963 after installing them. The accident occurred more than nine months thereafter. Even if it be assumed that a defect in the installation caused the accident tending to establish that the defect existed on November 3, 1963, there was no evidence when the lockers were installed on January 28, 1963. Applying to this case an observation made in *Carney v. Bereault,* 348 Mass. 502, "An inference that such was the case might be permissible if the defect in the construction of the lift (or installation of the lockers) had been discovered immediately or shortly after delivery. (Cases cited). But, as we cautioned in [*Carter v. Yardley & Co. Ltd.,* 319 Mass. 92] '. . . Where the thing in question is subject to change by wear or crystallization or deterioration or neglect or unskilful repair or improper handling, perhaps in a course of years, there is danger that juries might overlook the nearer causes and wrongly attribute the injury to some antecedent neglect of the manufacturer or supplier,

and do so at a time when he cannot recall forgotten events.' 319 Mass. 92, at pages 99-100. When, as here, the accident occurred after the defendant has surrendered control of the instrumentality involved, it is incumbent upon the plaintiff to show that it had not been improperly handled by intermediate handlers. *Evangelio v. Metropolitan Bottling Co. Inc.,* 339 Mass. 177, 183. See *LeBlanc v. Ford Motor Co.,* 346 Mass. 225, 229. The evidence shows no more than that the construction of the lift had not been changed since 1952, two years after Wayne had delivered it to Gulf. There is no evidence negativing the possibility that the condition of the lift had changed due to deterioration or mishandling. Because of this failure in proof, the plaintiff did not make out a case for the jury against Wayne." A directed verdict for the defendant Wayne was sustained. [See: *Corlett v. Hi Lo Corp.,* 350 Mass. 769.]

There was no evidence in the instant case that the lockers were improperly or carelessly installed and no inference that they were is reasonably permissible or warranted by any preponderance of the evidence. The only direct evidence bearing on the subject was given by the defendant's president, called to the stand by the plaintiffs that the lockers were properly installed having in mind their intended use by school children.

The justice was not required to believe that testimony, but "On the other hand, mere disbelief of testimony is not equivalent

to proof of facts to the contrary." *Zarillo v. Stone,* 317 Mass. 510. If the justice rejected the testimony of the defendant's president, as he apparently did and as was his right, there was no other direct evidence remaining in the case to show that any clip was required, that one clip was not sufficient or that the lockers were improperly installed, and, as no defect had been discovered "immediately or shortly" after installation of the lockers, no stronger inference is permissible that there was improper installation than the inference of later misuse in view of the lapse of time and the extensive use and exposure of the lockers during the more than nine months which intervened between the installation and the accident. *Carney v. Bereault,* 348 Mass. 502, 506, 507. *Rafferty v. The Hull Brewing Company,* 350 Mass. 359.

The mere separation of the clip from the locker does not by inference warrant a finding of negligence on the part of the defendant. *Horwitz v. Sulham,* 342 Mass. 327. (Breaking of an iron bar on a trailer.) *Zarillo v. Stone,* 317 Mass. 510. (A tire blow out.) *Cormier v. Bodkin,* 300 Mass. 357. (Breaking of angle irons causing trailer to break away from automobile.)

Inferring negligent installation of the lockers on the evidence reported must rest on surmise and conjecture.

"By bringing their actions, the plaintiffs assuumed the obligation to show that the negligence of the defendant caused their in-

jury. This was an affirmative burden and could not be left to surmise, conjecture or imagination. There must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts. While the plaintiff is not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an act of negligence for which the defendant is responsible than from a cause for which the defendant is not liable. If on all the evidence it is just as reasonable to suppose that the cause is one for which no liability would attach to the defendant as one for which the defendant is liable, then a plaintiff fails to make out his case." *Bigwood v. Boston & Northern Street Railway,* 209 Mass. 345, 348 and 349. See also *Howard v. Lowell Coca-Cola Bottling Co.,* 322 Mass. 456.

The defendant's request for rulings should have been granted.

■ The contention of the defendant in effect that the ruling of the justice that the doctrine of *res ipsa loquitur* does not apply is inconsistent with his finding of negligence, need not be considered. In any event that question could only be raised by a motion to correct the inconsistency or by a motion for a new trial. *Biggs v. Densmore,* 323 Mass. 106. *E. A. Strout Realty Agency, Inc. v. Gargan,* 328 Mass. 524.

*The findings for the plaintiffs are reversed.*

*An order to that effect should be entered and judgment awarded the defendant on both counts.*

Milton Cook of Boston for the Defendant.

Morris Michelson of Boston for the Plaintiff cited: *Poitorelli v. Associated Engineers, Inc.,* 176 Fed. Supp. 159; *Flaherty v. NY, NH & H RR.,* 337 Mass. 456 (RR liable for injuries to stevedore caused by fall of bags improperly stacked by employees); *Barabe v. Dubrkop,* 231 Mass. 466, 468 (installer of oven for tenant was liable to landlord for damage caused by fire due to improper installation of oven); Restatement, Torts, §§388, 390.