JAMES P. MAHER *vs.* GENERAL MOTORS CORPORATION
& another.

Middlesex.    March 4, 1976. — May 4, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& KAPLAN, JJ.

*Practice, Civil,* Directed verdict.    *Negligence,* Manufacturer, Motor vehicle.    *Collateral Estoppel.*

In an action for negligence against the manufacturer of an automobile by one who had purchased it new from a dealer and soon had complained to the dealer of trouble with the steering system and the horn and had left the automobile with him to fix a number of times, after which it collided with a utility pole when the "steering gear suddenly locked" and the plaintiff was injured, lack of evidence of any specific defect in the steering mechanism attributable to the defendant and of any evidence concerning the nature or quality of the work performed on the steering column by the dealer warranted a directed verdict for the defendant. [232-234]

Negligent operation in 1966 of a new automobile by its owner which caused an accident, as determined by a jury verdict against him

in an action by the owner of a utility pole with which the automobile, collided, barred recovery by the automobile owner in an action against its manufacturer for alleged negligence with respect to its steering system. [234-235]

TORT. Writ in the Superior Court dated January 10, 1967.

The action was tried before *Ponte, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Abraham J. Zimmerman* for the plaintiff.

*Robert A. Curley* (*Robert A. Curley, Jr.,* with him) for the defendant.

REARDON, J. The plaintiff brought an action against General Motors Corporation (General Motors) and Prince Pontiac Corp. (Prince Pontiac). We are concerned here with two counts against General Motors for negligence, one for personal injuries and a second for property damage. At the close of the evidence General Motors filed a motion for a directed verdict on those counts which the judge allowed, and the plaintiff excepted to the ruling on the motion.

It would appear that the plaintiff on August 3, 1966, purchased from Prince Pontiac a new 1966 Pontiac manufactured by General Motors. The automobile in question had been delivered to Prince Pontiac by Anchor Motor Freight, Inc., an automobile transportation company. About a week after the plaintiff had taken delivery of the car he left it at Prince Pontiac complaining of trouble with the steering system, stating that it was not working properly, that "the steering wheel popped up and when that happened the horn would not work." At the time, the odometer registered about 300 miles of driving. Having left the car at Prince Pontiac in the morning, he came back at five in the afternoon and was told by a mechanic that the car was "fixed," which seemed to be the case as he drove it from the garage. He returned later, however, with the same complaint, again leaving the car in the morning and picking it up in the afternoon, and went through the same

procedure a number of times. On November 16, 1966, the odometer registered 5,279 miles, on which day the plaintiff once more delivered the car to Prince Pontiac with the same complaint, picking it up again late in the afternoon. Such work as was done on the automobile on these visits was not paid for by the plaintiff but by General Motors under its warranty arrangements with Prince Pontiac.

On November 20, 1966, the plaintiff drove the car throughout the day, stopping in the afternoon for one or two drinks at a restaurant in Foxborough. After leaving the restaurant around four or five o'clock, "he just drove around" until 10:30 P.M., when he came in contact with a pole on Warren Street in Waltham at a slight bend in the road. The "steering gear suddenly locked and he ... continued straight ahead" to make the contact with the pole. He had been proceeding at twenty to twenty-five miles an hour, and there was no damage to the front of his car as a result of the contact. He cannot recall whether he applied his brakes. At the trial there was no testimony by any mechanic or other expert.

The action against General Motors was tried before a jury, together with the plaintiff's action against Prince Pontiac, a third-party action against General Motors by Prince Pontiac, and an action for negligence by Boston Edison Company (the owner of the pole in question) against the plaintiff, Prince Pontiac, and General Motors. Verdicts were directed in favor of General Motors in all actions against it; jury verdicts were returned in favor of Prince Pontiac in all actions against it. In the action by Boston Edison Company against Maher, there was a verdict for Boston Edison Company.

There was no error by the trial judge in directing verdicts for General Motors since nothing appears to indicate the introduction of any evidence from which a jury could properly conclude that it was more likely than not that the accident was the result of negligence on the part of General Motors. The plaintiff had the burden of proving that "a defect attributable to ... [General Motors's] negligence caused the injury or that after ... [General Motors]

'surrendered control of the ... [automobile, it] had not been improperly handled by himself or' others." *LeBlanc v. Ford Motor Co.*, 346 Mass. 225, 230 (1963), citing *Evangelio* v. *Metropolitan Bottling Co.*, 339 Mass. 117, 183 (1959). Nothing was adduced through expert testimony or otherwise concerning any specific defect in the steering mechanism of the automobile which could be laid at the door of General Motors. Furthermore, considering the circumstances of this case, especially the lack of any evidence concerning the nature or quality of the work performed on the steering column by Prince Pontiac to correct the malfunctioning horn, it cannot be said that the plaintiff adequately responded to the burden of proving that the automobile had been improperly handled once it passed from the manufacturer's control. It would seem then that, with respect to the negligence of General Motors, the jury had been left to conjecture and surmise. "When the precise cause is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then a verdict should be directed against the plaintiff." *Ryan* v. *Fall River Iron Works Co.*, 200 Mass. 188, 192 (1908). See *Currie* v. *Lee Equip. Corp.*, 362 Mass. 765, 768 (1973), and cases cited.

In any event the plaintiff is estopped on this appeal since in the action by Boston Edison Company against Maher the jury returned a verdict against Maher on a count for alleged negligent operation by him of a motor vehicle at the time and place of the accident. As it read at the time, G. L. c. 231, § 85, barred recovery on the part of the plaintiff where he himself was negligent. Since it has been determined that the negligence of Maher was a cause of the accident, the application of the doctrine of collateral estoppel would operate to bar him in any new trial of this action. *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448 (1968). See *Cambria* v. *Jeffery*, 307 Mass. 49 (1940) ; *Giedrewicz* v. *Donovan*, 277 Mass. 563 (1931). The plaintiff has had his day in court on the question of his negligence and is thus foreclosed from litigating that issue again. This being the

case, even were we to agree with the plaintiff that the motion for a directed verdict should not have been allowed, we would not be inclined to engage in the futile exercise of remanding the case for a new trial in which the plaintiff could not prevail.

*Exceptions overruled.*