Richard L. SULTIS, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

Civ. A. No. 83–1288–K.

United States District Court, D. Massachusetts.

June 3, 1988.

Leo V. Boyle, Meehan, Boyle & Cohen, P.C., Boston, Mass., for plaintiff.

Richard P. Campbell, John A.K. Grunert, Campbell & Associates, P.C., Boston, Mass., for GMAC.

Jerome Facher, Dennis M. Duggan, Jr., Hale & Dorr, Boston, Mass. for Uniroyal.

## OPINION

KEETON, District Judge.

Plaintiff asserts claims, grounded on breach of warranty (the Massachusetts version of strict products liability, *see Swartz v. General Motors Corp.*, 375 Mass. 628, 378 N.E.2d 61 (1978)) and negligence, for injuries sustained in the crash of a GMC Jimmy driven by him in the course of his employment as a Metropolitan District Commission ("MDC") officer on May 15, 1981.

Motions of the parties following verdict are before the court for determination, after written submissions and oral argument.

### I.

A central and potentially decisive issue is presented by defendant's motion for judgment notwithstanding the verdict (Docket No. 190), grounded on the contention that the evidence will not support the findings of the jury, in answers to Questions 2(a) and 3(a)(1) of the verdict form, that, at the time when the GMC Jimmy left the control of the defendant manufacturer-assembler, its right front tire "had a defect in the bead" that allowed air to leak out intermittently.

At the time of the accident on which this claim is based, plaintiff was on duty, patrolling the Southeast Expressway in the GMC Jimmy—a multipurpose vehicle capable of heavy use in removing a disabled vehicle promptly from the traveled way and also capable of high-speed chase. The GMC Jimmy was purchased new by the

MDC from a local dealer and had been operated for approximately 11,000 miles before the accident. Plaintiff testified that while on a curve to the right near the entrance to the Dewey Square Tunnel in Boston, in the course of a high-speed chase, he heard a "pop" and was unable to control a veer to the right, following which the GMC Jimmy crashed against parts of the curbing and tunnel walls first on his right-hand side and then on the other side.

Plaintiff's contention is (a) that the jury could make a finding reasoned from plaintiff's trial testimony, together with expert testimony, that the right front tire sustained an "air out" at or near the time when plaintiff heard a "pop" and just before the GMC Jimmy veered from the left lane toward the right lane (northbound), out of his control, and thus before any impact of any part of the vehicle with either a curb or a wall of the Dewey Square tunnel, and (b) that the jury could make a reasoned finding from evidence, including the expert testimony offered by plaintiff, that the "air out" occurred through unseating of the bead of the tire, running in underinflated condition, because it was and had been from the time of manufacture an intermittent "leaker."

At trial, plaintiff offered in evidence a tire that, according to his testimony (accepted as correct for present purposes), he removed from the right front wheel of the wrecked GMC Jimmy weeks after the accident and after it had been left first in one protected MDC parking area to which it was towed shortly after the accident and later in another protected MDC parking area to which it was later towed. Plaintiff has argued that physical characteristics of this tire, some of which were observable by the jury and others of which were shown by testimony regarding post-accident laboratory testing, served the purpose of identifying a physical defect. Unless the testimony of the expert witness, Bice (discussed below), closes a gap otherwise existing, however, this contention regarding proof of defect fails, because there is no evidence from which the trier of fact could make a reasoned finding that any one of the identified physical characteristics of the tire (or some or all of them combined) was a *cause* of intermittent leaking.

In the absence of evidence of a cause-in-fact connection between some identified physical characteristic of the tire and the intermittent leaking of the tire that allegedly contributed to the accident, any particular physical characteristic identified is not a "defect" as that term is used in the law of products liability, under any of the various claims grounded on negligence, warranty, and strict liability. In the law of Massachusetts, as elsewhere, a "defect" is a physical characteristic that makes the tire unreasonably dangerous by reason of the foreseeability of harm resulting from that defect. *See Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964, 969 (1978) (stating that "a manufacturer must anticipate the environment in which its product will be used, and it must design against the reasonably foreseeable risks attending the product's use in that setting"); *Restatement (Second) of Torts* § 402A(1) (1965). Thus, proof of a defect cannot be accomplished by merely proving some identified physical condition of the tire and also proving intermittent leaking. The absence of reasoned connection is obvious when one thinks of the example of proving that a tire had white sidewalls and that it leaked, and then arguing that the leak was caused by the white sidewalls. To meet the requirement of proof of a defect, the evidence must be sufficient to support a reasoned inference of causal connection between a physical condition and the intermittent leaking.

A second problem plaintiff faces in this case relates to proof that a defect existed *at the relevant time*. The evidence relied upon by plaintiff included testimony regarding laboratory testing of the tire at a time months after the accident, which testing is claimed by plaintiff to support a finding that the tire was *then* leaking intermittently, together with expert opinion testimony that the explanation of this post-accident condition of the tire was a defect in the bead of the tire that existed from the time of manufacture.

Defendant challenges especially the sufficiency of the evidence to support reasoned inferences (a) that any condition of the tire disclosed by post-accident testing existed also at the time the GMC Jimmy (with its tires installed) left the control of the defendant, long before the accident, (b) that some identified condition of the bead constituting a defect existed at that earlier time, and (c) that the identified condition had a causal connection with intermittent leaking.

The argument that the evidence in this case is sufficient to support the verdict can be accepted only if there is evidence from which the jury could reasonably find either (1) that a *specific* physical condition, affirmatively identified by the plaintiff, existed at the time the GMC Jimmy left the control of the defendant and that this condition rendered the vehicle unreasonably dangerous, or (2) that *res ipsa loquitur* (or some analogous doctrine) applies and permits an inference of defect, at the time the GMC Jimmy left the control of the defendant, in some *unspecified* respect.

### A.

Neither in the evidence of the physical condition of the tire, at any given time, nor in the expert opinions received in evidence, is there any affirmative specification that any identifiable physical condition of the tire (either of the bead or any other part) caused intermittent leaking. Instead, the only description of the defect is in terms not of a connection between any physical characteristic of any part of the tire and the leaking but instead merely of a conclusion that intermittent leaking was a consequence of some characteristics for some unidentified reason. The expert opinions proffered by plaintiff were expressed solely in the form of a conclusion that attributed the leaking to a condition of the bead, but this conclusion was expressed without any reasoned explanation that even identified *what* the alleged condition was that the expert purported to identify as a defect and *why* it could have any causal connection with a leak. The absence of any reasoned explanation of the conclusion is the more striking when one takes account of undisputed evidence that post-accident physical characteristics of the tire were affected both by wear and by one or more impacts during the accident sequence.

Plaintiff argues that the expert opinion of the witness Bice adequately supports, by affirmative and specific evidence, the jury's finding of a defect at the time the tire left defendant's control. The witness Bice, however, was not able to identify any particular physical characteristic that caused intermittent leaking, even at the time of his examination of the tire produced by plaintiff at trial. Instead, he referred more generally to "the bead."

### B.

The doctrine of *res ipsa loquitur* is not a theory of liability but rather is a formal recognition of reasoning to a conclusion circumstantially by excluding all other possibilities than the one to which the finding is directed. *See Restatement (Second) of Torts* § 328D, comment b (1965) (stating that a "res ipsa loquitur case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it"); *see also id.* at comment d (regarding use of expert testimony to meet requirements of *res ipsa loquitur*); *id.* at comment e (noting that plaintiff has burden to offer evidence that "will permit the conclusion that it is more likely than not that [the plaintiff's] injuries were caused by the defendant's negligence"); *id.* at Illustration 2 (relying upon *Ash v. Childs Dining Hall Co.*, 231 Mass. 86, 120 N.E. 396 (1918), for proposition that evidence was insufficient to support a negligence claim on the basis of *res ipsa loquitur* by patron against a restaurant operator for injury caused by a thin, small-headed tack in a blueberry pie, made on premises, with berries delivered to restaurant in "ordinary quart berry baskets" where tack was so small it might have become embedded in a blueberry, because plaintiff had not met her burden of establishing negligence "by evidence either direct or inferential"). The evidence here, however, fails to

offer any support for a reasoned finding for plaintiff (of a defect in the tire existing when it left the control of the defendant) based on rejection of each other possible explanation of the accident. In the absence of a reasoned basis for excluding each of the other possible explanations that are apparent, an impartial factfinder viewing the evidence cannot make a reasoned inference of the *res-ipsa* type—that is, a reasoned inference that a defect existing at the time the tire left the defendant's control caused the accident because all other possibilities have been disproved by a preponderance of the evidence.

In some circumstances, as observed in comment d to *Restatement* § 328D, expert testimony may satisfy one of the elements of proof essential to applicability of *res ipsa loquitur*; however, no case, either in Massachusetts or elsewhere, has been identified by counsel or by the court that supports application of *res ipsa loquitur* in the present case.

Plaintiff argues in his post-trial submissions that the expert opinion of the witness Bice supports application of *res ipsa loquitur* in this case. The witness Bice, however, was not able to offer any reasoned explanation for an opinion that the unspecified defect in the bead (that in his opinion existed after the accident, when the tire had approximately 11,000 miles of use and wear) existed not only immediately before the accident but as well at the time the tire left the control of the defendant.

In these circumstances, one clear and critical deficiency in the evidence is that even if we assume for the sake of argument that the evidence was sufficient to support a finding that a defect of the bead existed at the time of testing after the accident, and existed for some period before as an explanation of tire wear, no evidence before the court and jury would support a reasoned inference that the defect existed when the GMC Jimmy on which the tire was mounted left the control of the defendant manufacturer-assembler. *Cf. DaSilva v. American Brands,* 845 F.2d 356, 361 (1st Cir.1988) (noting in the circumstances of the case that "the applicable Massachusetts [products liability] law requires the jury to consider whether the defect in the machine existed *at the time it left the manufacturer*" and citing *Smith v. Ariens Co.,* 375 Mass. 620, 377 N.E.2d 954, 958 (1978)) (emphasis added).

Because the tire at issue had traveled over 11,000 miles in widely varying circumstances since leaving defendant's control, the present case is distinguishable on the facts from each of the cases on which plaintiff relies—*Omni Flying Club, Inc. v. Cessna Aircraft Co.,* 366 Mass. 154, 315 N.E.2d 885 (1974); *LeBlanc v. Ford Motor Co.,* 346 Mass. 225, 191 N.E.2d 301 (1963); *Calvanese v. W.W. Babcock Co.,* 10 Mass. App. 726, 412 N.E.2d 895 (1980).

### C.

Fed.R.Evid. 702 liberally provides for a court to receive expert opinion evidence that "will assist the trier of fact to understand the evidence or to determine a fact in issue." The task of the trier of fact, however, is to make a *reasoned* finding *based on evidence.* Even if an opinion that lacks any reasoned explanation is assumed to be admissible under Rule 702, it does not follow that it constitutes evidence sufficient to show a reasoned basis for a finding by the trier of fact. The expert opinion in this case fails to help at all in reasoning from evidence other than the expert's own conclusion. It does not affirmatively identify any specific physical characteristic constituting a defect. *Cf. Maher v. General Motors Corp.,* 370 Mass. 231, 234, 346 N.E. 2d 833, 835 (1976) (noting absence of evidence "adduced through expert testimony or otherwise concerning any specific defect"). It does not even suggest any basis on which a reasoned inference could be drawn that an *unspecified* defect existed at the time the GMC Jimmy left the defendant's control. In short, any law student or lay person, having no expert knowledge or experience with tires, could have framed the very conclusion that this expert expressed as his opinion, and could have offered as much of a reasoned explanation as the expert gave, which was solely the conclusion, "That is my opinion." This is no

more than an argument without reasoned support in evidence, masquerading as expert opinion. *Cf. In Re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir.1986) (stating that a "trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument"). Such an argument advanced by an expert cannot serve the bootstrapping function of itself constituting evidence from which the jury can make a reasoned finding. Such an argument, whether advanced by an expert witness or a lawyer, is speculation rather than opinion evidence sufficient to aid jurors in making a reasoned finding. *Cf. Swartz v. General Motors Corp.*, 375 Mass. 628, 632, 378 N.E.2d 61 (1978); *Guevara v. Dorsey Laboratories*, 845 F.2d 364, 368 (1st Cir. 1988).

I conclude that the evidence offered in this case, including the expert testimony, falls short of supporting reasoned inferences that would sustain the jury finding—in answers to Questions 2(a) and 3(a)(1) of the verdict form—that at the time when the vehicle left the control of the defendant, the right front tire of the GMC Jimmy driven by plaintiff at the time of the accident of May 15, 1981, "had a defect in the bead" that allowed air to leak out intermittently. As to claims based upon the allegation of a defect in the bead of the tire, judgment will be entered for the defendant notwithstanding the verdict of the jury. As to other claims tried to the jury, judgment will be entered for the defendant on the verdict of the jury. All other claims alleged in the complaint will be dismissed, in accordance with stipulations of record during trial.

## II.

With the aim of expediting final disposition of this case, and recognizing that the issue resolved in Part I is close and debatable, I proceed in the remainder of this Opinion to address other issues relevant to final disposition should the Court of Appeals reverse the ruling explained in Part I.

The most significant of these remaining issues concerns the effect, if any, to be given to the findings of the jury in the answers to the several parts of Question 5 of the verdict form, which were as follows:

5. Do you find that plaintiff knew that the GMC Jimmy had a seat belt assembly for use by the driver, that plaintiff was aware of the danger from failing to use it, that he was negligent in failing to use it, that this negligence was a proximate cause of injury he sustained in the accident of May 15, 1981, and that he sustained elements of harm or loss (for which you have allowed compensation in answering Question 4) that he would not have sustained if he had been using the seat belt assembly?

Answer YES or NO. Yes

If you have answered YES, complete the following blanks:

(1) Amount you have found in answer to Question 4 $ 50,000.00

(2) Amount, if any, for elements of harm or loss he would not have sustained if he had been using the seat belt assembly $ 35,000.00

(3) Item (1) minus Item (2)—the amount for elements of harm or loss he would have sustained even if he had been using the seat belt assembly $15,000.00

Defendant initially requested that the court submit to the jury an even broader "assumption of risk" defense, which was rejected by the court as inconsistent with Massachusetts law. Defendant's alternative request for submission of Question 5 was allowed by the court in order to obtain jury findings essential to disposition of the case, without the necessity for a new trial, should an unsettled issue of Massachusetts law be resolved in defendant's favor. That unsettled issue concerns the scope of any defense analogous to assumption of risk that will be recognized in Massachusetts in actions for breach of warranty.

Under Massachusetts law, assumption of risk has been discarded as a separate defense *in negligence cases;* conduct formerly relevant to assumption of risk may be considered by the jury in comparative negligence findings but does not

support a separate defense. In warranty cases, however, the Massachusetts comparative negligence statute does not apply. *Correia v. Firestone Tire & Rubber Co.,* 388 Mass. 342, 355, 446 N.E.2d 1033, 1040 (1983).

Plaintiff, citing *Breault v. Ford Motor Co.,* 364 Mass. 352, 359 n. 12, 305 N.E.2d 824, 829 n. 12 (1973) and *MacCuish v. Volkswagenwerk A.G.,* 22 Mass.App.Ct. 380, 494 N.E.2d 390 (1986), argues that plaintiff's failure to use the seat belt assembly is irrelevant to the breach of warranty claim in this case because "[t]he facts of this case constitute ... a justification" for failure to use it. Plaintiff's Memorandum Re: Availability of Seat Belt Defense to a Warranty Claim in Massachusetts at 3. This argument must be rejected because the evidence regarding justification by the circumstances of the high-speed pursuit was disputed. In answering "Yes" to Question 5, the jury has resolved that dispute against the plaintiff.

Plaintiff also argues, in the alternative, that in no event can an unreasonable failure to use a seat belt assembly be a defense to a breach of warranty claim, even as to that part of the harm that a jury has found would not have occurred if plaintiff had been wearing the seat belt assembly that was available for his use. As plaintiff observes, the Supreme Judicial Court has stated in *Breault* that "the comparative negligence statute would seem to be the appropriate means for dealing with the seat belt defense." 364 Mass. at 359 n. 12, 305 N.E.2d at 829 n. 12. Under *Correia,* however, the comparative negligence statute does not apply to a claim for breach of warranty. Instead, one specific and limited form of contributory participation in causing a loss has been recognized as a full defense rather than a basis for proportionate reduction of recovery. Will a limited form of contributory participation be recognized as a partial defense in Massachusetts where the jury has found "that plaintiff was aware of the danger from failing to use [the seat belt assembly], that he was negligent in failing to use it, that this negligence was a proximate cause of injury he sustained in the accident of May 15, 1981,

and that he sustained elements of harm or loss" to the extent of $35,000 of the total of $50,000, which $35,000 loss "he would not have sustained if he had been using the seat belt assembly"?

This is a question to which Massachusetts precedents do not provide a settled answer.

The basic characteristics of the *Correia* "defense" are further explained in *Allen v. Chance Manufacturing Co.,* 398 Mass. 32, 494 N.E.2d 1324 (1986). It is an

affirmative defense that the plaintiff is barred from recovery because (1) he violated a duty to act reasonably with respect to a product he knew to be defective and dangerous and (2) that conduct was a cause of the injury. A defendant making such a claim must prove that the plaintiff knew of the product's defect and its danger, that he proceeded voluntarily and unreasonably to use the product and that, as a result, he was injured. This defense differs from the traditional doctrine of assumption of the risk because it combines a subjective element, the plaintiff's actual knowledge and appreciation of the risk, with an objective standard, the reasonableness of his conduct in the face of the known danger.

*Id.* at 34, 494 N.E.2d at 1326 (citations omitted).

One may read this passage as supporting applicability of a modified (narrower than "traditional") doctrine of assumption of risk not only in the precise circumstances before the court in *Allen v. Chance Manufacturing Co.* but as well whenever a defendant proves, in a breach of warranty case, both (1) "the plaintiff's actual knowledge and appreciation" of a risk that eventuated in harm to the plaintiff, and (2) the plaintiff's violation of an "objective standard, the reasonableness of his conduct in the face of the known danger." *Id.* So interpreted, the opinion would support a defense to the extent of $35,000 of the $50,000 total loss suffered by the plaintiff in this case. It may also be argued that this conclusion is supported by that part of the rationale of *Correia* that supports the

*Correia* defense on grounds of absence of proximate cause. The Supreme Judicial Court reasoned that loss resulting from plaintiff's voluntarily and unreasonably using the product with knowledge of the defect and awareness of the danger was not proximately caused by the defect. *Correia*, 446 N.E.2d at 1040. For like reasons, the court might reason that so much of plaintiff's loss as resulted from plaintiff's voluntarily and unreasonably using the GMC Jimmy with knowledge and awareness of the risks of failing to use the seat belt assembly in the vehicle was not proximately caused by any defect in the vehicle.

A different and narrower reading of the opinions in *Correia* and *Allen*, however, also is possible. Several distinguishing elements may be noted. First, the requirements of knowledge and appreciation, as phrased in *Correia* and *Allen*, refer to knowledge of product "defect" and "danger" therefrom, whereas the knowledge and appreciation of danger found by the jury in this case concern the risks of failure to use a safety device made a part of the product for protection against risks remaining even in the absence of a defect in the product. One may question whether the Supreme Judicial Court would be likely to treat cases differently because of this distinction; in both instances, plaintiff's conduct involved knowledge of a risk (in this instance, the risk from failure to use a safety feature built into the product), violation of an objective standard of reasonableness of conduct in using the product in relation to that known risk, and harm that would not have occurred but for plaintiff's violation of that objective standard in the face of a known risk. Still, a distinction exists, because the risk that was known to the plaintiff in this case was a risk existing even in the absence of a defect; the known risk would have been greater if plaintiff had known of a product defect as well. Also, the opinion in *Allen* states as the second element of the defense that plaintiff's "conduct was a cause of *the injury*," and of knowledge of "the product's *defect and its* danger." *Id.* Thus, the opinion was not focused on the precise question presented by the seat-belt-assembly issue

in this case. It seems fair to say that the question presented by this case falls in an unsettled area between the proposition established by *Correia* and *Allen*, on the one hand, and on the other hand, the declaration in *Breault* that "the comparative negligence statute would seem to be the appropriate means for dealing with the seat belt defense."

Had I not reached the conclusion explained in Part I above, it might have seemed appropriate to certify this unsettled question of state law to the Supreme Judicial Court. Having reached the conclusion stated in Part I, however, I cannot certify that this unsettled issue of Massachusetts law will be dispositive. The appropriateness of certification may be reconsidered, however, if this matter is again before me in circumstances in which the judgment being entered now has been vacated and intervening developments in Massachusetts law have failed to clarify the answer to this question.

### III.

Remaining for consideration are issues regarding prejudgment interest, costs, and the form of judgment as it depends on resolution of each of the relevant disputes.

#### A. Interest and Form of Judgment

Aside from the issues of costs and prejudgment interest addressed below, the different outcomes that might result from different answers to the whole array of issues presented in this case are identified in three different forms of judgment.

##### Option 1

Pursuant to the allowance of defendant's motion for judgment addressed in Part I of this Opinion, judgment will be entered as follows:

> Judgment for defendant notwithstanding the verdict of the jury as to claims based upon the allegation of a defect in the bead of the tire. As to other claims tried to the jury, judgment for the defendant on the verdict of the jury. All other claims alleged in the complaint are

dismissed, in accordance with stipulations of record during trial.

### Option 2

If the Court of Appeals reverses this court's ruling on the motion for judgment notwithstanding the verdict, and if the question on the applicability of a partial seat-belt defense is decided in plaintiff's favor, it will be necessary to determine what provisions regarding prejudgment interest will be included in the form of judgment. It is undisputed that the $50,000 received by plaintiff in the settlement with Uniroyal is to be credited against the jury's $50,000 finding of damages. It is undisputed also that this credit fails to offset liability completely because of prejudgment interest on the $50,000 damages, which under Massachusetts law applicable to this case commences accruing on the date the complaint is filed, at the rate of 12 per cent per annum. Because of the coincidence that the jury's finding and the amount of the settlement were both $50,000, the excess of the defendant's liability over the $50,000 credit, as of the date the $50,000 settlement was received, is exactly the amount of the prejudgment interest then accrued (12 per cent per annum on $50,000 from the date of the complaint to the date of the settlement). On first impression, it might appear that allowing further prejudgment interest, on the excess, from the date of settlement to the date judgment is entered, would be allowing interest on interest, which is plainly inappropriate under Massachusetts law. I conclude, however, that the settlement would be credited first against prejudgment interest then accrued, so the unpaid balance (though in this case, by coincidence, exactly equal to then-accrued prejudgment interest) is in fact an unpaid balance of the principal sum of $50,000 damages. It follows, then, that prejudgment interest must be allowed on this excess from the date of receipt of the $50,000 in settlement to the date of entry of judgment.

Accordingly, it will be appropriate, if the circumstance stated above arises, to enter judgment as follows:

(1) Judgment for plaintiff on his breach of warranty claim on the verdict of the jury (a) in the amount of $50,000, (b) plus interest in the amount of $_____, which is interest at the statutory rate of 12 per cent per annum, Mass.Gen.Laws c. 231, § 6B, from May 13, 1983 (when the complaint was filed) to the date on which plaintiff received $50,000 in settlement from Uniroyal, (c) plus interest in the amount of $_____ (which is interest on the amount by which the sum of (a) and (b) exceeds the $50,000 settlement, at the statutory rate of 12 per cent per annum from the date on which plaintiff received $50,000 in settlement from Uniroyal to the date of judgment), (d) less a credit of $50,000 for the settlement. The award under part (1) is therefore $_____.

(2) Judgment for plaintiff on his negligence claim on the verdict of the jury (a) in the amount of $25,000, (b) plus interest in the amount of $_____, which is interest at the statutory rate of 12 per cent on $25,000 from May 13, 1983 (when the complaint was filed) to the date on which plaintiff received $50,000 in settlement from Uniroyal, (c) less a credit of $50,000 for the settlement, which fully satisfies part (2) of this judgment. Part (2) is a declaratory determination, however, as to an additional ground for part of the compensation for plaintiff's injuries awarded in part (1) of this judgment, and is *not* an additional recovery.

This judgment will bear interest at the federal post-judgment rate of ____ per cent.

### Option 3

If the Court of Appeals reverses this court's ruling on the motion for judgment notwithstanding the verdict, and if the question on the applicability of a partial seat-belt defense is decided in defendant's favor, it will be appropriate to enter judgment as follows:

(1) Judgment for plaintiff on his negligence claim on the verdict of the jury (a) in the amount of $25,000, (b) plus interest in the amount of $_____, which is interest at the statutory rate of 12 per cent

per annum from May 13, 1983 (when the complaint was filed) to the date on which plaintiff received $50,000 in settlement from Uniroyal, (c) less a credit of $50,000 for the settlement, which fully satisfies part (1) of this judgment.

(2) Judgment for plaintiff on his breach of warranty claim on the verdict of the jury (a) in the amount of $15,000, (b) plus interest in the amount of $_____, which is interest at the statutory rate of 12 per cent for the period stated in part (1), (c) less a credit of $50,000 as stated in part (1), which fully satisfies part (2) of this judgment. Judgment on plaintiff's breach of warranty claim is a declaratory determination, however, as to a ground of recovery in addition to that stated in part (1) and is not an additional recovery.

### B. Costs

Pursuant to the judgment I have in fact ordered to be entered in this case (identified above as Option 1), defendant, as the prevailing party, is entitled to costs absent some special reason for a different ruling, Fed.R.Civ.P. 54(d), and I find none in this case.

Similarly, but with contrasting outcome, pursuant to a judgment entered under Options 2 or 3 above, I conclude that plaintiff, as the prevailing party, would be entitled to costs. Defendant argues that under Option 3 plaintiff would not be a "prevailing party" within the meaning of Rule 54(d) because, by reason of the settlement with Uniroyal, plaintiff would be entitled to no money damages from defendant. I conclude that this argument must be rejected.

The award of costs is governed by federal law. *See Bosse v. Litton Unit Handling Systems*, 646 F.2d 689, 695 (1st Cir. 1981); 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2669 (1983). Under federal law, plaintiff is a "prevailing party" in circumstances where he has established liability on the part of defendant and has proved damages. That plaintiff has settled with an unrelated third party does not alter the fact that he is the prevailing party in this action with defend-

ant. *See d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 896 (9th Cir.1977) (noting that "[t]he jury awarded [plaintiff] $500,-000[, and] she is no less the prevailing party because [defendant] was entitled to a set-off against the judgment" by reason of prior settlements with other parties in the amount of $1,200,000); *cf. Liedberg v. Goodyear Tire & Rubber Co.*, 102 F.R.D. 249, 250 (N.D.Ga.1984) (stating that "a plaintiff who recovers a jury verdict establishing defendant's liability and settles the issues of damages is a prevailing party within the meaning of Rule 54(d)").

Plaintiff has requested that costs be taxed at this time. This request clearly cannot be honored in light of my ruling in Part I of this Opinion. I conclude, further, that it would not be appropriate for the court to direct the clerk, pursuant to Rule 54(d), to determine at this time *the amount* of the costs that plaintiff would be entitled to under Options 2 and 3 in the event either ultimately becomes the Final Judgment of this court. Nevertheless, I note that plaintiff's request for costs will not be allowed to the extent the costs are attributable to expert witness fees in excess of the statutory witness fees prescribed in 28 U.S.C. §§ 1920, 1821. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, —— U.S. ——, 107 S.Ct. 2494, 2497–99, 96 L.Ed.2d 385 (1987).

Should a decision of the Court of Appeals (and, if necessary, the Supreme Judicial Court) make clear that a form of judgment corresponding to either Option 2 or Option 3 above is appropriate, the plaintiff shall have an opportunity at that time to request that costs be taxed to the extent consistent with this Opinion.