UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2374
No. 93-1033

MARY HAYES, ADMINISTRATOR OF THE ESTATE OF
ROBERT HAYES, JR., AND ERIC HAYES,

Plaintiffs, Appellants,

v.

DOUGLAS DYNAMICS, INC.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, U.S. District Judge]

Before

Boudin and Stahl, Circuit Judges,

and Fuste,* District Judge.

John Benjamin Carroll with whom Woodruff L. Carroll was on brief

for appellant.
John L. Kerr with whom Whiting & Elinoff was on brief for

appellee.

November 1, 1993

*Of the District of Puerto Rico, sitting by designation.

-2-
2

FUSTE, District Judge. Appellants Mary and Eric Hayes
FUSTE, District Judge.

appeal from a grant of summary judgment in a negligence and

breach of warranty action resulting from a car accident in which

Robert Hayes, Jr., the son of Mary and brother of Eric, was

killed. The district court held that plaintiffs failed to adduce

adequate evidence to show that defendant's product was the

proximate cause of the decedent's fatal injury. We affirm.
affirm

I.

Background

On January 30, 1988, Robert Hayes, Jr. and his brother

Eric were passengers in the rear compartment of a Ford Tempo.

Robert, Jr. was sitting in the right rear passenger seat, and

Eric was sitting behind the driver's seat. While the car was

stopped at an intersection, waiting to make a left turn, it was

hit from behind by a Chevrolet pickup truck. The driver of the

truck attempted to swerve and avoid the car. The collision

pushed the car into oncoming traffic where it was hit in the left

front area by a van. The car spun one-hundred and eighty degrees

before coming to rest. Robert, Jr. died the following day from a

head injury sustained in the accident. The cause of death was a

blow to the back of the head, behind the right ear. The other

three passengers suffered minor injuries.

Exactly which part of the truck hit the Tempo is a

central issue in this case. The Chevrolet truck was fitted with

a Western brand snowplow manufactured by defendant-appellee

Douglas Dynamics. The snowplow unit is designed so that the

-2-
2

frame, consisting of a metal hydraulic pump and motor unit with a

metal lift channel, can remain attached to the truck even when

the snowplow blade is removed. The blade was not attached to the

truck at the time of the accident. Part of the lift channel

consists of a lift arm which protrudes outward from the front of

the truck. The end of the lift arm is a U-shaped plate

approximately 2 inches by 3 1/2 inches in dimension.

II.

Theories of Recovery and Defense

Plaintiffs brought a diversity jurisdiction suit in

federal district court alleging breach of warranty1 and

negligence and contending that defendant is liable for the

wrongful death of Robert, Jr. and the mental injuries suffered by

Eric Hayes as a result of seeing his brother sustain the fatal

injury. The plaintiffs' theory is that the protruding lift arm

of defendant's product caused the death of Robert, Jr., either by

directly striking his head, or by propelling forward some metal

piece of the Tempo which then dealt the fatal blow to his head.

The plaintiffs also argue that the presence of the plow frame on

the truck altered the dynamics of the pickup, making it more

dangerous in a collision.

In order to succeed in a claim for breach of warranty

under Massachusetts law, the plaintiff must show that the

1Under Massachusetts law, the theory of breach of an implied
warranty of merchantability is basically the same as strict
liability theory in tort. Wolfe v. Ford Motor Co., 386 Mass. 95,

100, 434 N.E.2d 1008, 1011 (1982).

-3-
3

defendant's product was the proximate cause of the injury.

Colter v. Barber-Greene Co., 403 Mass. 50, 61, 525 N.E.2d 1305,

1312 (1988); Swartz v. General Motors Corp., 375 Mass. 628, 633,

378 N.E.2d 61, 65 (1978). A plaintiff alleging that a product

was negligently designed can proceed by showing that the product

either proximately caused or enhanced the injuries alleged.

Simmons v. Monarch Mach. Tool Co., 413 Mass. 205, 212, 596 N.E.2d

318, 323 (1992). Because it is undisputed that Robert, Jr. was

killed by a single blow to the head, the plaintiffs must show

that the plow frame either caused the injury or that the injury

would not have been fatal if the frame had not been attached to

the truck. If the plaintiffs cannot prove that the plow frame

was the proximate cause of the fatal injury itself, or that it

caused an enhancement of a lesser injury, then the defendants are

entitled to summary judgment as a matter of law.

Proximate cause is a legal definition which requires

that the precipitating object or action "in a continuous

sequence, unbroken by any new cause, produces an event and

without which the event would not have occurred." Wallace v.

Ludwig, 292 Mass. 251, 254, 198 N.E. 159, 161 (1935). A

plaintiff need not prove the exact cause of the accident or

disprove every possible cause, but he must show that there is a

greater likelihood that the accident resulted from the

defendant's negligence than that it did not. Enrich v. Windmere

Corp., 416 Mass 83, 616 N.E.2d 1081, 1084 (1993). Therefore, in

order to proceed with their claims, the plaintiffs here must be

-4-
4

able to show that there is a greater probability that the lift

arm caused the death of Robert, Jr. than that some other object

in the crash was the agent of injury.

Defendant alleges that the evidence offered by

plaintiffs is insufficient to establish that there is a genuine

issue of fact as to whether the snowplow, directly or indirectly,

caused the injury to Robert, Jr. Accordingly, the defendant

filed a motion for summary judgment. Plaintiffs opposed and

filed a cross-motion seeking similar relief. The district court

granted the defendant's motion for summary judgment. The

plaintiffs appeal the grant of summary judgment and the denial of

their cross-motion. Plaintiffs also challenge several

prejudgment rulings of the district court.2

III.

Summary Judgment and Standard of Review
Summary Judgment and Standard of Review

The purpose of summary judgment is "to pierce the

pleadings and to assess the proof in order to see whether there

is a genuine need for trial". Garside v. Osco Drug, Inc., 895

F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 Advisory

Committee's Note). Therefore, if the pleadings, depositions,

answers to interrogatories, admissions and any affidavits on file

show that there is no genuine issue as to a material fact, then

the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

2Because we affirm the grant of summary judgment to the
defendant, we do not reach the other issues raised on appeal by
the plaintiffs.

-5-
5

Where, as here, the moving party does not have the

burden of proof at trial, that party must make a showing that the

evidence is insufficient to support the nonmoving party's case.

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once this

showing has been made, it is up to the nonmoving party to

establish the existence of a genuine disagreement as to some

material fact. United States v. One Parcel of Real Property, 960

F.2d 200, 204 (1st Cir. 1992). In this context, "genuine" means

that "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party", and a "material fact" is one

which "might affect the outcome of the suit under the governing

law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Appellate review of summary judgment decisions is

plenary. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.

1990). In applying this standard, we view the record in the

light most favorable to the nonmovants, the plaintiffs. Bank One

Texas, N.A. v. A.J. Warehouse, Inc., 968 F.2d 94, 97 (1st Cir.

1992).

IV.

Discussion

In support of their claims, the plaintiffs offer direct

evidence in the form of the depositions of witnesses and

photographs from the scene, as well as the affidavits of several

experts.3

3Following the order of the district court granting summary
judgment, the plaintiff moved to submit further evidence under
Fed. R. Civ. Pro. 59(e) and 60(b)(6). The denial of these

-6-
6

A. Direct Evidence

1. Paul Porter

Paul Porter, a police officer who arrived immediately

after the accident, testified that based on his examination of

the vehicles, he believed that the front of the truck, with an

emphasis on the left front quarter, struck the right rear of the

Tempo. Porter stated that he saw "the plow frame and front end

as one entity," and did not think that the plow frame did all of

the damage to the Tempo. Porter testified that no blood or hair

samples were found on the plow frame itself. In addition, Porter

stated that when he arrived at the accident scene, Robert, Jr.

was still in the car. The officer observed that the boy was

pinned under a piece of the Tempo, a metal pillar from between

motions is also challenged on appeal. Decisions of the district
court under these rules are reviewed for abuse of discretion.
Valley Citizens for a Safe Environment v. Aldridge, 969 F.2d

1315, 1317 (1st Cir. 1992) (Rule 60(b)); Mariani-Giron v.

Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991) (Rule 59(e)). A Rule

60(b)(6) motion will be granted by a district court only if it
finds "exceptional" circumstances that justify "extraordinary"
relief. United States v. One Urban Lot, 882 F.2d 582, 585 (1st

Cir. 1989). Rule 50(e) motions are granted for reasons such as
the commission by the trial court of a manifest error of law or
fact, the discovery of new evidence, or an intervening change in
the law. National Metal Finishing Co. v.

BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 124 n.2 (1st

Cir. 1990)(citations omitted). Plaintiffs presented no reasons
to the district court which would warrant relief under 60(b) or
59(e). The judge noted that none of the information presented
was new, nor was it unavailable when the summary judgment was
filed. In addition, he stated that the new evidence would not
have changed his prior analysis. We are unable to find any
reasons in the record to justify the submission of further
evidence, and plaintiffs have not advanced any. Therefore we
find that it was not an abuse of discretion for the court to deny
the plaintiff's motions, and we will not consider the additional
affidavits on appeal.

-7-
7

the side rear window and the rear window. The pillar was leaning

against the head of Robert, Jr., behind his right ear.

Because Porter did not distinguish between the plow

frame and the front of the truck, his testimony does not help to

establish that the snowplow frame, directly or indirectly, caused

the death of Robert, Jr. Porter's testimony about the lack of

blood or hair on the plow frame tends to refute the theory that

the lift arm itself came into contact with the victim's head. In

addition, the officer's observation of the metal pillar leaning

against the decedent's head suggests one alternative explanation

for how Robert, Jr. may have received the head injury.

2. William Richardson

William Richardson, the driver of the truck, stated

that he hit the car off-center because he swerved in an attempt

to avoid the accident. He testified that approximately the

center of the front end of his truck hit the right rear passenger

side of the Tempo, but he was unable to see whether the lift arm

itself impacted the car. Richardson's testimony establishes that

the right rear passenger area of the Tempo received the brunt of

the collision. Due to this, it is understandable that the injury

to Robert, Jr. was more severe than that to any other occupant of

the car. Because Richardson could not see what happened to the

lift arm during the collision, his testimony does not help to

establish a causal link between defendant's product and the

injury to the victim.

3. Police Photographs

-8-
8

The police photographs offered by the plaintiffs depict

a mangled mass of metal in the right rear passenger area of the

Tempo, and some damage to the left front of the truck. The

pictures show that the damage to the right rear part of the car

was far more extensive than that sustained by the left rear

region. The photographs do not further the plaintiffs' claim

that the defendant's product caused the injury, but rather

suggest a number of different possibilities for what might have

hit Robert, Jr. on the head.

Wolf Technical Services, an engineering consulting

firm, was employed to analyze the photographs of the accident.

The consultants concluded that the rear seat back was moved

forward approximately 11.5 inches on the left end and 24 inches

on the right end, and the rear bumper was displaced approximately

15 inches at the left end and at least 30 inches on the right

side. These results are consistent with the other evidence that

the right rear part of the Tempo sustained the brunt of the

damage. However, as the district court pointed out, the study

does not establish that the plow frame caused the seat back and

fender to move forward.

The plaintiffs claim that the lift mechanism caused,

among other damage, a wedge shaped mark on the trunk lid of the

Tempo. If shown, this might help to establish that the lift

mechanism played a major role in the accident. As noted by the

district court, however, no such mark is visible in the police

photographs.

-9-
9

B. Expert Witnesses

The plaintiffs have produced the affidavits of a number

of expert witnesses and argue that, under Federal Rule of

Evidence 705, we must accept the conclusions of these experts.

While nonmovants may rely on the affidavits of experts in order

to defeat a motion for summary judgment, such evidence must still

meet the standards of Rule 56. Fed. R. Civ. P. 56(e) requires

that the nonmoving party "set forth specific facts showing that

there is a genuine issue for trial." Plaintiff's reliance on

Federal Rule of Evidence 705, which allows an expert to give

opinion testimony, together with the supporting reasons, without

disclosure of the underlying facts or data, is inapposite.4

This rule was designed to apply in the context of a trial, where

cross-examination provides an opportunity to probe the expert's

underlying facts and data and to test the conclusions reached by

the expert.

Although expert testimony may be more inferential than

that of fact witnesses, in order to defeat a motion for summary

judgment an expert opinion must be more than a conclusory

assertion about ultimate legal issues. Bowen v. Manchester, 966

F.2d 13, n.16 (1st Cir. 1992). See also Moody v. Boston and

4Fed. R. Evid. 705 provides:

The expert may testify in terms of opinion or
inference and give reasons therefor without
prior disclosure of the underlying facts or
data, unless the court requires otherwise.
The expert may in any event be required to
disclose the underlying facts or data on
cross-examination.

-10-
10

Maine Corp., 921 F.2d 1, 5 (1st Cir. 1990); Sultis v. General

Motors Corp., 690 F. Supp. 100, 103 (D. Mass. 1988). The

evidentiary rules regarding expert testimony at trial were "not

intended . . . to make summary judgment impossible whenever a

party has produced an expert to support its position." Merit

Motors, Inc. v. Chrysler Corp., 569 F.2d 666, 673 (D.C. Cir.

1977). We are not willing to allow the reliance on a bare

ultimate expert conclusion to become a free pass to trial every

time that a conflict of fact is based on expert testimony. As

with all other evidence submitted on a motion for summary

judgment, expert affidavits must be reviewed in light of

F.R.Civ.P. 56.

Where an expert presents "nothing but conclusions -- no

facts, no hint of an inferential process, no discussion of

hypotheses considered and rejected", such testimony will be

insufficient to defeat a motion for summary judgment. Mid-State

Fertilizer v. Exchange Natl. Bank, 877 F.2d 1333, 1339 (7th Cir.

1989). See also Evers v. General Motors, 770 F.2d 984, 986 (11th

Cir. 1985); Bulthuis v. Rexall Corp, 789 F.2d 1315, 1318 (9th

Cir. 1985). Although an expert affidavit need not include

details about all of the raw data used to produce a conclusion,

or about scientific or other specialized input which might be

confusing to a lay person, it must at least include the factual

basis and the process of reasoning which makes the conclusion

viable in order to defeat a motion for summary judgment. We find

that each of the expert affidavits failed to contain sufficient

-11-
11

support for the conclusion that the injury to Robert, Jr. was

caused by the defendant's product.

1. Nicholas Miller

Nicholas Miller, an expert in accident reconstruction,

used the police report, autopsy report, death certificate,

hospital and medical records, depositions, pictures of the

accident scene and vehicles, and the study conducted by Wolf

Technical Services, in order to reconstruct the accident. Miller

also utilized similar vehicles to simulate the relative positions

of the truck and the Tempo before impact, and conducted a video

computer graphic reenactment. Based on this input, Miller

concluded that the lift mechanism caused Robert, Jr.'s injuries.

Miller opines that the deceased was struck by sheet

metal pushed forward by the lift arm of the snowplow. He

explains his reasoning as follows: (1) the fatal blow was by an

object of the same size, shape and rigidity as the lift arm; (2)

there was no other object of similar shape, size, and rigidity

near the decedent's head; (3) therefore, defendant's product

caused the injury. Even assuming that the victim was killed by

an object of the dimensions and shape of the lift arm ("rigidity"

was never further discussed by any of the experts), Miller's bald

assertion that no other part of the car or truck had that

particular shape is difficult to accept, given that Miller never

had the opportunity to examine the Tempo after the accident. The

photographs of the Tempo after the crash are not sufficiently

clear to establish the shape and size of each of the pieces of

-12-
12

the wreck. Miller claims to have eliminated all other

possibilities as to what could have struck Robert, Jr., but

provides no factual details about this analysis. He fails to

even mention or discuss the only object which anyone saw near the

victim's head, the metal window support which Porter observed.

In his second supplemental affidavit, Miller discusses

the exemplar vehicles. Starting with a picture of a Chevrolet

pickup truck with a snowplow frame attached, situated behind a

Ford Tempo, Miller drew a line representing where the snowplow

would end up if it proceeded directly into the Tempo. Miller

concludes that "it is apparent as an observable fact, that the

lift mechanism attached to the truck reached and invaded the

right-rear seat at head height and would have struck the right

rear passenger."

Miller provides no supporting data to establish that

the exemplar vehicles were in the same positions relative to each

other as the actual truck and Tempo had been at the time of the

accident. Even assuming that the exemplar vehicles were correctly

positioned, these pictures do not show what actually happened to

the Tempo. The pictures of the exemplar vehicles show only that

if the truck were to penetrate directly through the trunk of the

car, in a straight line, then the front of the truck, including

the plow mechanism, would end up in the rear passenger area.

This establishes nothing more than that it is possible, given the

relative height of the vehicles, that the plow caused injury.

Miller provides no facts from which we can reach the conclusion

-13-
13

that it is more probable than not that the plow frame tore

directly, without any resistance, into the car in a linear

fashion and reached the passenger's head.

2. Norris Shoemaker

Norris Shoemaker, a consultant in transportation

safety, reviewed the same documents and pictures as Mr. Miller.

In his initial affidavit, Shoemaker made general observations

about the design of the snowplow, asserting that the defendant's

product "changes the crush characteristics of the pickup truck

and concentrates the energy of the collision in a narrow area

projecting in front of the vehicle in a narrow spearlike

configuration" and, as a result, the snowplow frame "can and has

inflicted severe head and other injuries". This is not evidence

of what actually happened in the accident with which we are

concerned. Although in his supplemental affidavit Shoemaker

makes more specific assertions about the accident at hand, they

are not sufficient to establish a causal connection. Shoemaker

asserts that "a comparison of the exemplar vehicles and the

damage photographs clearly show a penetration to and beyond the

right rear passenger seat by the Defendant's product." However,

without additional facts, a comparison of these two sets of

photographs does not sustain such a conclusion. The exemplar

pictures show only where the truck may have struck the Tempo, and

the damage pictures are not sufficiently clear or detailed to

show that the lift arm or other parts of the plow frame ever

penetrated into the right rear passenger seat.

-14-
14

3. Gerald Feigin

Dr. Gerald Feigin, the medical examiner who performed

the autopsy on the deceased, submitted an affidavit. Based on

his experience, the autopsy report and pictures, and an

examination of a Western lift arm, Feigin concluded that a blunt

object shaped like a lift armcaused the fatal blow to Robert, Jr.

Feigin's affidavit was written four years after he

performed the original autopsy. At the autopsy, Feigin noted a

one centimeter contusion on the head. However, in his affidavit,

he suggests that the bruise was in conformity with the size of

the terminus of the lift arm, which is 2 inches by 3 1/2 inches.

This creates a factual discrepancy as to the actual size of the

bruise. In addition, as the district court pointed out, the

pictures attached to the autopsy do little to support Feigin's

conclusion. They do not clearly show a U-shaped bruise

conforming to the reported size and shape of the lift arm. It is

arguable that these concerns go to the weight of the evidence and

the credibility of the witness, and would not themselves be a

sufficient basis, on summary judgment, for disregarding the

evidence. But even if we accept the conclusion that the bruise

on the decedent was the same size and shape as an injury which

would result if a "blunt object shaped like a Western lift arm"

struck a human head, this does little to establish that, in this

particular case, the lift arm actually did strike Robert Hayes,

Jr.

4. Dr. Ommaya

-15-
15

Plaintiffs also attached the affidavit of Dr. Ayub Khan

Ommaya, a neurosurgeon. Ommaya examined the police report,

accident photographs, medical records, autopsy report, death

certificate, witness depositions, and affidavits of the other

experts. Based upon this evidence, he concluded that the fatal

injury was caused by the snowplow lift mechanism because, among

other unnamed reasons, "the deceased was seated in the path of

the lift mechanism and [the] type and location of the bruising

fits the penetration path of the lift mechanism". Ommaya added

that there was no other source for the head injury and that his

conclusion was inevitable from the dynamics of the accident,

including the acceleration forces. Ommaya asserted that Robert,

Jr. would have sustained minor injuries similar to those of the

other passengers in the car if the lift mechanism was not

present.

The difficulty with Dr. Ommaya's opinion is that he

begins with one assumption, that the deceased was in the path of

the lift mechanism; adds a further assumption, that there was no

other object which could have caused the injury sustained by the

deceased, and then concludes that the lift mechanism caused the

injury. As we have seen, there are not sufficient facts to

establish that the lift mechanism entered the compartment where

Robert, Jr. was sitting, and Ommaya does not offer any additional

facts. The assumption that there was no other source of injury

disregards the presence of all other parts of the Tempo and the

truck, in particular the piece of the car which Officer Porter

-16-
16

testified he found lying against the boy's head. Ommaya fails to

discuss the "dynamics of the accident" or the "acceleration

forces", which he claims lend support to his conclusion.

Ommaya asserts that Robert, Jr. would have sustained

minor injuries similar to those of the other passengers in the

car if the lift mechanism was not present. It is clear from the

police photographs that the primary damage to the Tempo was in

the right rear area of the car. The driver of the truck

testified that the right rear passenger area received the brunt

of the collision. Regardless of the presence of the snowplow

frame, therefore, it is likely that the passenger seated in that

compartment would have been more severely injured than any of the

other passengers.

V.

Conclusion

We hold that there is no genuine dispute of material

fact as to whether the defendant's product was the proximate

cause of the fatal injury to Robert Hayes, Jr. The evidence does

not establish that it is more probable than not that the plow

frame came into contact, directly or indirectly, with the victim.

Given the available facts, the experts were able to provide no

more than unsubstantiated conclusions. The district court

correctly granted summary judgment. Affirmed.
Affirmed

-17-
17